# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**Vs.**<br><br><br>**ALLOY ORVILLE ALLEN JR.**<br>**Defendant.** | **Case No. CR-22-311/464 (RAM)** |

## DEFENDANT'S SENTENCING MEMORANDUM

**TO THE HONORABLE RAUL ARIAS MARXUACH,**
**UNITED STATES DISTRICT JUDGE**
**FOR THE DISTRICT OF PUERTO RICO:**

**COMES NOW** Mr. Alloy Orville Allen Jr., by and through the undersigned counsel, who respectfully submits this Sentencing Memorandum and requests that the Court accept the stipulated sentence, pursuant to Rule 11(B)(1)(C) of the Federal Rules of Criminal Procedure.

## I. INTRODUCTION & SUMMARY OF ARGUMENT

This matter is now before the Court pending sentencing. As detailed below, the plea agreement and its recommended sentence of 168 months should be adopted by the Court in light of all the pertinent sentencing factors applicable to this case.

Mr. Allen is a life long resident of the island municipality of Vieques. The island and its inhabitants have been subjected to diverse financial crisis based on its geographical isolation and its dependence on tourism to thrive. Moreover,

Vieques inhabitants lack local higher education options, and do not receive aid for entrepreneurial endeavors. Mostly, Vieques inhabitants who do not have intellectual or financial resources have to live off the land or the subterranean economy of contraband. In Mr. Allen's case, he raised farm animals as well as fished to complement his meager income.



Moreover, the geographical isolation makes it difficult for inhabitants to refuse to collaborate in drug trafficking endeavors. More often than not, they are ordered to go out and participate in drug trafficking ventures and if they refuse, they can pay for it with their lives, and while they are out in the ocean risking both life and liberty, their families are held hostage with nowhere to go.

## II. PERSONAL HISTORY AND CHARACTERISTICS

Mr. Allen is the product of the union between Alloy Allen and Mishaleen López. As is often the case, the consensual union of residents of the lesser Antilles, and frequent travel among the Islands. In Puerto Rico it is common the frequent travel and seasonal migration between Vieques, Culebra, St. Thomas and St. Croix.

Currently his father lives in Florida and works as a chef. Mr. Allen had recurrent contact with his father but unfortunately after his incarceration

lost all contact with him. His mother is a casino employee in St. Croix. She currently lives in St. Croix and has frequent contact with him. She visits him at the Detention Center.

Mr. Allen has five siblings, three of them currently residing in St. Croix, all of them from his mother lineage. He has two other siblings from his father's side but barely has contact with them as they reside in Florida.

Mr. Allen was raised in a single mother household since age 3. He was raised by his grandmother who took care of him while his mother was at work. Important in his development is Mr. Terry Thompson, who had two siblings with his mother, and served as his father figure. However, his mother and Mr. Thompson separated when he was 18.

He comes from a Public Housing Project in St. Croix. Mr. Thompson worked in landscaping while his mother worked at the local supermarket.

At age 19 he commenced travelling often to Vieques as a result of his fisherman's trade. He met Jelimar Escobar and procreated three children ages 10, 8 and 2. His older children live with Mr. Allen's mother in St. Croix while his youngest lives with Ms. Escobar in Vieques.



Seven years ago, he formalized a relationship with Ms. Jessica Fernández, a Vieques' resident. She has three children of her own which Mr. Allen has served as a father figure. The father of

Ms. Fernández children is deceased, and Mr. Allen has assumed a father figure role for all three of them.

Mr. Allen raised cattle, sheep and goats as a means of subsistence while in Vieques. Unfortunately, the COVID Pandemic forced him to abandon fishing which had been his main economic support. He would import conch from the Virgin Islands, among other fish.

Unfortunately, Mr. Allen is a product of the circumstances. He abandoned school in 7th grade to work in St. Croix. As the eldest of a family barely subsisting in the Public Housing Project, he suffered the pressure to contribute to the family income. He did random jobs at first since he was not of legal age to work, but eventually found his way to the landscaping crew of his stepfather. However, when he was 19 he saw an opportunity to fish professionally which led to meeting his first consensual partner and mother of his three children in Vieques.

The economic pressure on Mr. Allen was outstanding with three children of his own, he is currently under ASUME, and three children of Ms. Fernández. At times he had to sell the animals he raised to provide for his family.

Mr. Allen is a product of the environment he was raised. He started drinking at age 10 and has been smoking marihuana since he was 17. Moreover, he got hooked with the National Tragedy of opiates and consumed Percocet while he ingested alcohol.

Unfortunately, there were no employment options for Mr. Allen in Vieques were he has his family. He would fish but it is a seasonal employment and sometimes you are at the mercy of other more commercial fishermen. There is

fierce competition in Vieques in the fishermen's industry for a market that has not been well developed and is dependent upon local consumption.

Fortunately, Mr. Allen believes he is in good physical health although he has a rare heartbeat. He has suffered from irregular heartbeat for some years. However, the medical resources in Vieques are extremely limited. Moreover, there are health insurance issues. In short, the malady of the poor. At least he has no history of allergies to food items or medications and there is no palpable symptom of any condition that substantially limits his physical activity which is essential for earning his living as an animal caretaker and fisherman.

He hopes to earn his high school equivalency and has not lost hope in becoming an assistant to a veterinarian. He is conscious of the sentence negotiated with the government and feels repentant about his prior acts, which at the time seemed like the only option to sustain his family.

It must be emphasized that among all the above uncertainty and difficult circumstances of life, Mr. Allen has no prior arrests. No juvenile adjudications nor any other mishap with the law. On the contrary, he has been a responsible father, a hard-working lower class individual trying to raise and provide for his children and those of his consensual partner.

Mr. Allen is repentant about his actions. He has learned from this experience and misses his family a lot. He is eager to reunite with his children as being imprisoned has been very difficult. He has made the most out of this hurdle and plans to further his education, enroll in vocational training and work while serving his sentence so that he can be prepared when he finishes his

sentence. As expressed, before he has high hopes to become veterinary technician.

### III. GOVERNING LAW & 3553(a) Factors

The sentence imposed on the defendant should be driven by the "overarching" command of 18 U.S.C. § 3553(a), which instructs district courts to "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." See, **Kimbrough v. United States**, 552 U.S. 85, 89 (2007) (quoting **Gall v. United States**, 552 U.S. 38, 56 (2007)). As the Court knows, the U.S. Sentencing Guidelines are merely advisory, **United States v. Booker**, 542 U.S. 220 (2005) and, while they generally provide the starting point for sentencing, **Kimbrough**, 552 U.S. at 109 (citation omitted), a sentencing court may not presume that a within-guidelines sentence is reasonable, or that only "extraordinary circumstances… justify a sentence outside the Guidelines range." **Gall v. United States**, 552 U.S. 38, 47, 50 (2007). In every sentencing, the court "must make an individualized assessment based on the facts presented." **Gall**, 552 U.S. at 50. This individualized assessment is undertaken pursuant to the long-standing principle that "the punishment should fit the offender and not merely the crime." **Pepper v. United States**, 562 U.S. 476, 487-88 (2011) (quoting **Williams v. New York**, 337 U.S. 241, 247 (1949).

As the Supreme Court has explained, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." **Pepper**, 562 U.S. at 487 (quoting **Koon v. United States**, 518 U.S. 81, 113 (1996)). Indeed, it is the district court that is uniquely situated to have greater familiarity with the individual defendant and individual case than the U.S. Sentencing Commission. **Kimbrough**, 552 U.S. at 574. Accordingly, after calculating the applicable guideline range, the sentencing court should then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether the requested sentence is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to accomplish the goals of sentencing or whether a variance is warranted. See **Gall**, 552 U.S. at 50. The factors to be considered under 18 U.S.C. § 3553(a) are:

1.  **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The Court will sentence Mr. Allen to two similar crimes to be served concurrently. Unfortunately, he felt the economic pressure and other extrinsic pressures which cannot be divulged as their attorney. He felt scared about the physical integrity of himself and his family.

However, there are a few things that must be evaluated and that tilt the balance in favor of Mr. Allen. Mr. Allen has no previous arrests and has not obstructed justice in any way. While in custody he has no disciplinary record.

**1. General Deterrence**

The sentence agreed by the parties is extremely harsh. 168 months which is 14 years. Life changes a lot in 14 years, particularly after incarceration. Friends and family abandon the incarcerated, the inmate loses contact with friends, and basically establishes new relations and a new lifestyle full of constriction and loneliness while incarcerated. We submit general deterrence is not an issue in this case.

Moreover, it has been clearly established that there is no correlation between punishment and reductions in crime. See, ***Benjamin Barsky, et al, Vaccination plus Decarceration — Stopping Covid-19 in Jails and Prisons (New England Journal of Medicine, Apr 29. 2021); Forbes, Even After Vaccine, Federal Prisons Still Have COVID-19 Concerns (May 31); Forbes, Office of Inspector General Critical Of Bureau of Prisons In Extensive Reports (May 31).***

**2. to protect the public from further crimes of the defendant**

As we expressed in the prior paragraph there are no indicators that Mr. Allen will commit further crimes. He has no arrest records nor any other indicator that might tilt the balance in favor of assuming he will commit further crimes.

Moreover, Mr. Allen has expressed his pain and loneliness regarding the predicament he is in. He verbalized in the presentence interview his pain and suffering for being away from his family, particularly his children. He knows the

pain this situation has caused to his wife and to his children, those adopted as a stepfather, and those he procreated. The experience has been traumatic to say the least.

We reiterate there does not exist any indicators that would tend to make any further crimes from Mr. Allen a reality. This has been a most difficult experience and Mr. Allen is sure he would not like to repeat the pain, the suffering, the loneliness, the frustration, the pain to third parties, particularly his children, that this experience has generated.

**C. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

### 3. The Kinds of Sentences Available

The parties have been very careful to reach a sentence, realizing that there are two crimes and the recommendation is concurrency among them. Thus, the sentence is reasonable but not greater than necessary to establish the goals of the 18 USCA 3553 factors discussed herein. A sentence of 168 months is a harsh sentence and the government has agreed because of its harshness, and above Guideline recommendation. The government has considered two instances of the same offense and all aggravating factors it could consider. Certainly, the agreement reached by the parties takes into account all sentences available.

**4-5. The Kinds of Sentences and the Guideline Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements**

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. **United States v. Booker**, 543 U.S. 220, 245-67 (2005). Thus, a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." **Gall v. United States**, 552 U.S. 38, 53 (2007) (quoting **Koon v. United States**, 518 U.S. 81 (1996)). The critical question in Mr. Allen's case is the exact weight this Court should give to the guidelines. As recognized in **Gall**, district courts "may not presume that the Guidelines range is reasonable." 552 U.S. at 49, 128 S. Ct. at 597.

Therefore, the Court should consider that the plea agreement reached by the parties is particularly appropriate to remedy what would otherwise be overly severe penalties imposed by the Controlled Substances Act and the Sentencing Guideline recommendations that were drafted for drug conspiracy cases.

**6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

We submit to the Court this is a non-issue in this case and that the sentence agreed by the parties does not create any disparity either in the District of Puerto Rico or from a National statistical analysis.

## IV.   CONCLUSION

Mr. Allen is a 28-year-old male with three children of his own and three children of his common-law wife. Prior to this incident he had no criminal record despite his upbringing in public housing projects in St. Croix. He has worked all his life and is responsible for his child support. Mr. Allen used to regularly visit the children who currently live with his mother and has been described by his consensual partner as an honest and hardworking man.

Certainly, we concede we are asking the Court to sentence Mr. Allen concurrently for two crimes committed months apart. However, the sentence suggested is a harsh one that would separate Mr. Allen from society for 14 years. The sentence is legally available to the Court and will not create sentence disparity with other similar situated individuals.

We submit that when taken into consideration all sentencing factors delineated in 18 USCA 3553 the sentence will be sufficient but not greater than necessary to fulfill Congress objectives when sentencing.

**WHEREFORE**, for the reasons set forth above, Mr. Allen respectfully requests that this Court accept the plea agreement negotiated between the parties and sentence him in accordance with the terms contained therein and grant such additional relief as is warranted.

Respectfully submitted.

March 25th, 2024  
Date

S/ Jennie M. Espada Ocasio  
JENNIE M. ESPADA OCASIO, ESQ.  
USDC PR 225003

P.O. Box 13811
San Juan, PR 00908
(787)758-1999 & (787)633-7199
espada.esquire@gmail.com

## V.    CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties involved. In addition, I certify that a true and correct copy has been mailed via first class mail to Mr. Alloy Allen, MDC-Guaynabo, Catano, PR.

Respectfully submitted.

March 25th, 2024        S/ Jennie M. Espada Ocasio
Date        JENNIE M. ESPADA OCASIO, ESQ.
        USDC PR 225003
        P.O. Box 13811
        San Juan, PR 00908
        (787)758-1999 & (787)633-7199
        espada.esquire@gmail.com